# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

|   |   |
|---|---|
| JEFF MACY,<br><br>               Plaintiff,<br><br>   v.<br><br>CALIFORNIA HIGHWAY PATROL, et al.,<br><br>               Defendants. | No. 5:23-cv-02245-RGK-BFM<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |

This Report and Recommendation is submitted to the Honorable R. Gary Klausner, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## SUMMARY OF RECOMMENDATION

Plaintiff Jeff Macy, proceeding pro se, filed a civil rights complaint relating to a traffic stop conducted by Officer Christopher Bates and Sergeant Jeffrey O'Brien, two employees of the California Highway Patrol. At earlier

stages of the case, the District Judge (on this Court's recommendation) dismissed all but two of Plaintiff's claims: first, that his Fourth Amendment right against illegal seizure was violated because the traffic stop was unreasonably prolonged, and second, that his rights were violated by unlawful searches of his truck. Defendants have now moved for summary judgment, asking that these claims be dismissed.

The Court recommends granting Defendants' Motion. First, Defendants did not unreasonably prolong the traffic stop. The undisputed evidence is that Defendant Bates completed the mission of the traffic stop—investigating a potential seatbelt violation—in around ten minutes. After that, it was Plaintiff's actions that prolonged the stop: he disputed the validity of the citation, asked for a supervisor to come to the scene, and continued to argue the merits of the ticket with the supervisor after he arrived. Given these facts, the Court concludes that Defendants' conduct did not violate the Fourth Amendment.

Likewise, Defendants' searches of Plaintiff's truck did not violate the Fourth Amendment. Defendant Bates' first search was lawful under the automobile exception to the warrant requirement: Bates had probable cause to believe a seat belt violation had occurred when he initiated the traffic stop, and he had probable cause to believe evidence of that violation would be found in the truck. As for the second search, undisputed facts establish that Plaintiff voluntarily consented to the search.

For these reasons, the Court recommends granting Defendants' Motion for summary judgment.

# RELEVANT PROCEDURAL HISTORY

Plaintiff filed the operative Second Amended Complaint on May 22, 2024. (ECF 20.) The Court issued an Interim Report and Recommendation, recommending dismissal of all but two of Plaintiff's claims. (ECF 23.) The District Judge accepted that recommendation, dismissed all claims except for Plaintiff's two Fourth Amendment claims, and ordered service of the Second Amended Complaint on Defendants. (ECF 23, 27.) Defendants filed an Answer (ECF 34), and the parties proceeded to discovery.

On February 11, 2025, Defendants moved for summary judgment, arguing that undisputed facts established that no Fourth Amendment violation occurred. (ECF 66.) Plaintiff opposed Defendants' Motion. (ECF 71.)[1] The Court noted that the Opposition did not comply with Local Rule 56-2 because it did not include the required "Statement of Genuine Disputes," and thus ordered him to supplement his filing. (ECF 73 at 3.)[2] Plaintiff then supplemented his Opposition with a Statement of Genuine Disputes (ECF 82) and a Declaration with Exhibits (ECF 83).

Defendants filed a Reply to Plaintiff's Opposition along with a Response to Statement of Genuine Disputes on March 11, 2024, and evidentiary objections to Plaintiff's Exhibits. (ECF 86, 87.) Defendants' Motion is now fully briefed and ready for decision.

---

[1] Plaintiff filed two documents, both of which purport to be his Opposition. The Court refers to the document filed at ECF 71 because it was filed later in time. There are no significant differences between the filings.

[2] For ease of reference, the Court refers to ECF generated page numbers.

## LEGAL STANDARD

A court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1987)). A dispute of material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. A party cannot create a genuine dispute of material facts simply by making assertions in its legal papers. *S.A. Empresa De Viacao Aerea Rio Grandese (Varig Airlines) v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Similarly, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may consider the fact undisputed for purposes of the motion." *C.B. Moreno Valley Unified Sch. Dist.*, 732 F. Supp. 3d (C.D. Cal. 2023) (quoting Fed. R. Civ. P. 56(e)(2)).

The moving party bears the initial burden of identifying facts, supported by evidence in the record, demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the non-moving party "must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 323-24.) The non-moving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256; Fed. R. Civ. P. 56(c)(1)(A) (party asserting a fact is genuinely disputed must cite to "particular parts of materials in the record, including depositions, documents,

4

electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."). If the non-moving party fails to carry its burden, then the court must grant the motion for summary judgment. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000) (citing *Celotex Corp.*, 477 U.S. at 322).

When ruling on a motion for summary judgment, courts must view all inferences drawn from the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In judging the evidence, the Court does not make credibility determinations or weigh conflicting evidence. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

## EVIDENTIARY ISSUES

The Court first considers what facts should be deemed undisputed for purposes of this motion, given Defendants' Statement of Undisputed Facts ("SUF"), Plaintiff's Statement of Genuine Disputes ("SGD"), Defendants' response to Plaintiff's Statement, and Defendants' objections to Plaintiff's Exhibits. (ECF 75, 82, 87.)

### A.    Defendants' Statement of Undisputed Facts

Defendants' Statement lists forty facts it claims are undisputed. Plaintiff does not explicitly admit that any of them are undisputed. As to many of Defendants' proposed undisputed facts, however, Plaintiff's response does not actually dispute the fact Defendants alleges to be uncontroverted—instead he simply restates the same facts in his own words. Given the lack of any plausibly material difference between Defendants' and Plaintiff's Statements, the Court treats the following facts as undisputed, using the numbering system from

Defendants' Statement: SUF 3, 4, 6, 7, 8, 10, 13, 14, 17, 18, 19, 20, 23, 24, 27, 28, 29, 31, 32, 33, 36, 41, 42. *See* Fed. R. Civ. P. 56(e)(2).

The Court finds as follows as to the remaining proposed undisputed facts.

- **SUF 1:** Defendants alleges that on June 27, 2023, at approximately 12:55 p.m., Officer Bates was on routine patrol when he observed four people (three passengers and one driver) seated in a white Isuzu box truck traveling the opposite direction on State Route 18. (SUF 1.) That Statement is supported by Bates' sworn declaration (Bates Decl. at ¶ 3.) The timing is generally supported by Mr. Macy's own narrative in the video he took on the day of the incident. (ECF 66-5 ("Macy Video Tr.") at 80 ("Yeah, I've been here since 1:00.").) Plaintiff admits much of Defendants' allegation: the date, what he was driving, that his family was in the car, and that he was driving on State Route 18 when he passed Defendant Bates parked on the opposite side of the road. (SGD A, C.) The Court considers all those facts undisputed.

  Plaintiff suggests there is some dispute about what time Officer Bates first spotted him: he states that he left the dump at 12:09 p.m. and submits a receipt from the dump that bears that timestamp. (ECF 83 at 100.) But proof that Plaintiff wrapped up his business at the dump at 12:09 p.m. does not undermine Defendant Bates' claim that he first saw Plaintiff on Highway 18 at 12:55 p.m. Under Rule 56(e), the Court considers the fact undisputed for purposes of the Motion. *See* Fed. R. Civ. P 56(e) (if a party "fails to properly address another party's assertion of fact as required by Rule 56(c)," the court may "consider the fact undisputed for purposes of the motion").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- **SUF 2:** SUF 2 states that Officer Bates suspected one of the passengers was not properly belted because the vehicle Plaintiff was driving can seat a maximum of two passengers and a driver. Plaintiff responds that the traffic citation was ultimately dismissed. (SGD B.) That the ticket was ultimately dismissed once Plaintiff went to court does not meaningfully address the claim that Bates suspected a seatbelt violation when he pulled Plaintiff over. For the same reason as above, then, the Court considers the fact undisputed for purposes of the Motion.

- **SUF 5:** SUF 5 indicates that about two minutes after Bates turned on his overhead lights, Plaintiff pulled over on a highway turn off. Plaintiff admits all this except he does not explicitly admit how long it took him to pull over. (SGD E.) Defendants' Statement is supported by the Bates' Declaration (Bates Decl. at ¶ 4) and Plaintiff is silent about Defendants' claim; he does not meaningfully address it, let alone provide evidence undermining Bates' Declaration. Under Rule 56(e), the Court considers the fact undisputed for purposes of the Motion. *See* Fed. R. Civ. P. 56(e) (courts may also consider a fact undisputed if the party "fails to properly support an assertion of fact").

- **SUF 9:** SUF 9 concerns Bates' initial inspection of the truck during the first few minutes of the traffic stop. Bates says that he looked into the truck and in plain view, saw that the passenger seated next to the driver was not in a "designated seating position" and was secured with an aftermarket lap belt. (SUF 9.) Plaintiff states that Bates "stepped up, put his hand inside the cab, and leaned into Plaintiff's vehicle"—thus disputing whether there may have been some search at this initial stage. (SGD I.) It's possible Plaintiff is confusing this

7

interaction with Bates' first search, which occurred after O'Brien arrived. In any event, Defendants support this aspect of their SUF with Bates' Declaration (Bates Decl. at ¶ 4), while Plaintiff makes no attempt to support his statement. Because Plaintiff fails to support his assertion with evidence, under Rule 56(e), the Court considers the fact undisputed for purposes of the Motion.

- **SUF 11:** SUF 11 concerns the length of time between when Bates returned to his car to write the citation and when he returned to give Plaintiff a citation. Defendants claim that five to six minutes elapsed and supports that claim with Bates' Declaration. Plaintiff claims that ten minutes elapsed. (SGD K.) But the only evidence he points to—the video he and his son shot during the second half of the traffic stop[3]—does not support his assertion that this interval was ten minutes long; the relevant portion of the stop was not captured on his video recording. Under Rule 56(e), the Court considers the fact undisputed for purposes of the Motion.

- **SUF 12:** SUF 12 concerns Defendants' claim that Bates next returned to Plaintiff's truck to issue a ticket. (SUF 12; Bates Decl. at ¶ 5.) Plaintiff says that he approached Bates' patrol car and saw Bates flipping through the Vehicle Code book trying to find a violation. (SGD L.) He points to the timestamps of his video, which do show Officer Bates sitting in his patrol car with a book that could be a Vehicle Code open in front of him. But that portion of the video was recorded *after* the supervisor was called, not in the time frame that

---

[3] A link to the timestamped video Macy and his son recorded is included in the evidence Plaintiff submitted in support of his Opposition (ECF 83 at 117 (citing https://www.youtube.com/watch?v=GvmaMonuPeo)) and is referred to here as the "Macy Video."

SUF 12 references. In his deposition, Plaintiff admitted Bates "probably did" come back to his car and "probably trie[d] to give me a ticket." (Macy Deposition Tr. at 60, 61-62.) Plaintiff cannot contradict his own deposition testimony in an attempt to defeat a motion for summary judgment. *Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1008 (9th Cir. 1998) ("A party cannot create a triable issue of fact, and thus survive summary judgment, merely by contradicting his or her own sworn deposition testimony with a later declaration."). Both because Plaintiff does not support his contention, and because he all but conceded Defendants' contention in his deposition, the Court considers the fact undisputed for purposes of the Motion.

- **SUF 15:** SUF 15 relates the time elapsed between when Macy pulled over and when Macy requested a supervisor be called to the scene. Defendants claim that period was 10 minutes, and support that claim with Bates' Declaration. (Bates Decl. at ¶ 5.) Plaintiff claims that period was approximately 20 minutes. The evidence he cites in support (Macy Video at 4:12), however, does not support his assertion. Because Plaintiff failed to properly support his assertion of fact, the Court considers the fact undisputed for purposes of the Motion.

- **SUF 16:** SUF 16 is Defendants' allegation that the traffic stop would have been completed when Bates returned to Plaintiff's car, had Plaintiff not refused to sign the ticket and instead asked for a supervisor. (Bates Decl. at ¶ 5.) Plaintiff claims that Bates did not ask him to sign the citation until 10 minutes after O'Brien arrived. The evidence he cites in support (Macy Video at 15:55) does not support his assertion—it shows that Bates did go over the ticket with him at that point, but it does not establish that that was the first time Bates

tried to issue the ticket. Moreover, Plaintiff admitted during his deposition that Bates did "probably" come back from his car and "probably" tried to give him a ticket, and that he instead said he wanted to talk to Bates' supervisor. Because Plaintiff has not provided evidence to support his assertion, and because Defendants' claim is supported by Plaintiff's own deposition, under Rule 56(e), the Court considers the fact undisputed for purposes of the Motion.

- **SUF 20 and 22:** SUF 20 concerns Sergeant O'Brien's acknowledgment of the call for a supervisor, which Defendants claim occurred at 1:10 p.m. SUF 22 concerns the time Sergeant O'Brien arrived on the scene. Both claims are supported by Bates' and O'Brien's declarations. (Bates Decl. at ¶¶ 6-7; O'Brien Decl. at ¶¶ 3-4.) Plaintiff admits that he waited around for Bates' supervisor to show up but does not address Defendants' contention about the timing. (SGD T, V.) Because Plaintiff "fail[ed] to properly address" Defendants' assertion of fact, under Rule 56(e), the Court considers the fact undisputed for purposes of the Motion.

- **SUF 25 and 26:** SUF 25 concerns discussions between Plaintiff and Sergeant O'Brien, and between Sergeant O'Brien and Officer Bates. Defendants describe the conversations and state that they lasted about three minutes and two minutes respectively. (SUF 25.) Plaintiff's description of the nature of the discussion does not differ materially, and he does not address Defendants' claim about the length of the conversation. (SGD Y, Z.) Because Plaintiff did not address this assertion of fact, and because the length is corroborated by Plaintiff's own video (Macy Video at 4:15-7:02, 7:02-9:09), the Court considers the fact undisputed for purposes of the Motion.

- **SUF 30 and 31:** SUF 30 and 31 relate to the first search of the truck. Defendants claim Bates stepped up on the running board of the truck to look in, and that Bates' inspection lasted 15 seconds. (SUF 30.) Plaintiff does not dispute that Bates stepped up on the running board but claims Defendant Bates also put his hand inside the vehicle and leaned in, and that he lacked consent to do so. (SGD 30-31.) He does not address the length of the search. (SGD 30-31.) Defendants do not challenge that this inspection was a search, and thus the exact nature of the entry into the truck, and whether a hand entered the cab's airspace, is not material to the Court's decision. Likewise, as Defendants do not rely on consent as justifying this first search, there is no material factual dispute on this point. The Court will thus presume the facts in the light most favorable to the non-moving party.

    With respect to the length of the inspection, Plaintiff did not address this assertion of fact, and the length is corroborated by Plaintiff's own video. Thus, under Rule 56(e), the Court considers the length of the first search undisputed for purposes of the Motion.

- **SUF 34:** SUF 34 concerns the second search of the car. With respect to this inspection, Defendants claim Bates and O'Brien did not disturb anything in the truck and that no property was taken. (SUF 34.) The claim is supported by Bates' Declaration, and by Plaintiff's video, which shows Bates visually inspecting and taking a picture, but not touching anything in the truck. (Bates Decl. at ¶ 8; Macy Video at 13:32-13:59.) Plaintiff alleges that Bates took a picture, a fact Defendants admit elsewhere; this is therefore not a disputed fact. (SGD 34; SUF 33.) With respect to the balance of SUF 34, Plaintiff does not address the allegation, and his own video corroborates

11

Defendants' claim that nothing was disturbed and none of Plaintiff's personal property was taken out of the truck. Thus, under Rule 56(e), the Court considers the fact that nothing was disturbed or taken undisputed for purposes of the Motion.

- **SUF 35:** SUF 35 concerns discussions between Plaintiff, Sergeant O'Brien, and Officer Bates. Defendants describe the conversations and state that they lasted about twelve minutes. (SUF 35.) Plaintiff's description of the discussion does not differ materially, and he does not address Defendants' claim about how long the conversation went on. (SGD 35.) Because Plaintiff did not address this assertion of fact, and because the length is corroborated by Plaintiff's own video (Macy Video at 14:00-26:55), under Rule 56(e), the Court considers the fact undisputed for purposes of the Motion.

- **SUF 37:** SUF 37 relates to the time when the incident ended. Defendants indicate that they cleared the incident with dispatch at about 1:47 p.m., about 30 minutes after Sergeant O'Brien arrived; they support that claim with their own Declarations. (SUF 37; Bates Decl. at ¶ 10; O'Brien Decl. at ¶ 6.) Plaintiff indicates he was eventually free to leave but does not specify what time that happened. (SGD 35.) Because Plaintiff did not address this assertion of fact, and because the length of time between when O'Brien arrived and when Plaintiff was released is corroborated by Plaintiff's own video (Macy Video at 4:10-27:00), under Rule 56(e), the Court considers the fact undisputed for purposes of the Motion.

- **SUF 38 and 39:** SUF 38 and 39 relate to Defendants demeanor throughout the stop—specifically, that they did not use profanity or force, did not place Plaintiff in handcuffs, were cordial, and did not

raise their voices. Defendants support these claims with their own Declarations (Bates Decl. at ¶ 11; O'Brien Decl. at ¶ 5) and the entirety of Macy's video. In an attempt to show that these facts are disputed, Plaintiff claims that he was illegally detained for over an hour, and that Bates refused to identify himself when asked. (SGD 38-39.) Neither of these meaningfully challenge Defendants' specific assertions of fact, and as such, the Court considers the facts in SUF 38 and 39 undisputed under Rule 56(e)for purposes of the Motion.

- **SUF 40:** Defendants assert that the traffic stop lasted just over 50 minutes, with about 40 minutes coming after Plaintiff asked for a supervisor to come. (SUF 40.) Plaintiff claims that the stop lasted over an hour, citing his video. The video, however, does not support his contention. Macy's video is only 27 minutes and 10 seconds long. While it does not capture the entire traffic stop, it does capture the portion *after* Plaintiff requested a supervisor. Moreover, the undisputed facts discussed above establish that the call for a supervisor occurred approximately ten minutes after Defendant Bates initiated the stop. Plaintiff's video thus does not establish that the stop lasted over one hour. For purposes of this Motion, the Court considers Defendants' asserted fact undisputed. *See* Fed. R. Civ. P. 56(e)(2).

## B.    Plaintiff's Exhibits

Plaintiff does not submit a separate document with additional facts that he believes are disputed; he does, however, attach a Declaration and Exhibits to his Opposition. (ECF 83.) The Declaration merely indicates what exhibits are attached. (ECF 83 at 1-4.) The Exhibits consist of 200 plus pages of Public Records Act requests, discovery responses, filings from this case, legal squibs

apparently prepared by Plaintiff, civilian complaints, copies of tickets, and the like. Apart from his own video and the receipt from the dump, none of these documents are referenced in Plaintiff's Opposition or in his Statement of Genuinely Disputed Facts. Defendants filed Objections, arguing that the evidence is irrelevant or has not been submitted in an admissible form. (ECF 86-1.)

The Court has reviewed the Exhibits and does not see their relevance to Defendants' Motion or to the claims that remain in the case, with the exception of the video Macy and his son shot during the traffic stop. As to the remaining Exhibits, Defendants' Objections are sustained; none suggests there is a *material* difference of fact that would preclude summary judgment.

## FACTUAL SUMMARY

On June 27, 2023, at approximately 12:55 p.m., Defendant Bates was on a routine patrol when he observed four people seated in the cab of white Isuzu box truck. (SUF 2.) Based on his training and experience, Bates suspected one of the passengers was not properly seat belted and initiated a traffic stop. (SUF 2-4.) He exited his vehicle and approached the passenger's side door window to speak with Plaintiff, the driver. (SUF 6.)

Bates asked for Plaintiff's driver's license, registration, and proof of insurance, and explained to him that the stop was due to a potential seatbelt violation. (SUF 7-8.) He peered into the vehicle through the passenger's side door window and noticed that the passenger seated next to Plaintiff was not seated in a designated seat and was secured by an after-market lap belt. (SUF 9.) Based on that observation, Defendant Bates determined that the passenger was not properly secured. (SUF 9.)

Defendant Bates returned to his patrol car to confirm the information

14

Plaintiff provided, fill out a citation, and confer with the California Vehicle Code. (SUF 10.) After about five or six minutes, Bates finished filling out the citation and returned to Plaintiff's vehicle to issue the citation. (SUF 11.) As Bates attempted to hand Plaintiff the citation, Plaintiff expressed his disagreement with the citation. (SUF 13.) Plaintiff refused to take the citation and asked for a supervisor. (SUF 14.) Plaintiff believed he was being unlawfully detained and hoped the supervisor would let him go without the citation being issued. (SUF 18.) Approximately ten minutes had passed between the time Bates pulled Plaintiff over and Plaintiff's request for a supervisor. (SUF 15.) Had Macy taken the ticket and not asked for a supervisor, the stop would have been completed at that point. (SUF 16.)

Bates returned to his patrol car and contacted the on-duty supervisor, Defendant O'Brien. (SUF 19.) Defendant O'Brien acknowledged the call at 1:10 p.m. and headed toward the location of the stop. (SUF 20.) At some point shortly before O'Brien arrived, Plaintiff began recording the stop on his cell phone. (SUF 21.)

Defendant O'Brien arrived at the stop location at 1:18 p.m. (SUF 22.) He approached Plaintiff, and then he and Plaintiff discussed the validity of the citation for approximately three minutes. (SUF 25.) O'Brien then conferred with Bates about the citation for about two minutes before returning to speak with Plaintiff. (SUF 26.) O'Brien tried to explain to Plaintiff why he had been pulled over, but Plaintiff continued to dispute the citation. (SUF 27-28.)

About three minutes into Plaintiff arguing about the citation, Defendant Bates stepped up on the truck's running board to look in the cab and the seatbelt at issue. (SUF 30.) Defendant Bates' head and hand entered the cab, but he did not enter the vehicle. (SUF 30-31.) The inspection lasted approximately fifteen seconds. (SUF 31.)

15

Plaintiff continued to contest the citation. After a few minutes passed, Bates asked if he could get the passengers out so he could inspect the truck. Plaintiff said, "Sure, come on out guys." (SUF 32; SGD 32.) The second search lasted about thirty seconds, and Defendant Bates took a picture of the seatbelt. (SUF 33.) Nothing inside the cab was moved during the inspection and no property was taken. (SUF 34.)

Plaintiff continued to contest the validity of the citation for another twelve minutes before discontinuing his argument. (SUF 35.) Defendants cleared the incident with CHP dispatch at 1:47 p.m. (SUF 37.) At no time during the incident did either Defendant use profanity, use force, or place Plaintiff in handcuffs. (SUF 38.) The entire traffic stop lasted just over fifty minutes, approximately forty of which occurred after Plaintiff asked for a supervisor. (SUF 40.)

## ANALYSIS

Plaintiff claims Defendants Bates and O'Brien violated his Fourth Amendment rights because they unreasonably prolonged the traffic stop and because they conducted illegal searches of his vehicle. Constitutional violations are remedied under 42 U.S.C. § 1983. To maintain a § 1983 claim, Plaintiff must show that (1) the conduct complained of was committed by a person acting under color of state law and (2) the conduct deprived him of a constitutional right. *See L.W. v. Grubbs*, 974 F.2d 119, 120 (9th Cir. 1992). Defendants argue that they are entitled to qualified immunity because the undisputed facts establish that no Fourth Amendment violation occurred. (ECF 66-1 ("Mot.") at 13.)

### A.    Qualified Immunity Standard

Determining whether a defendant is entitled to qualified immunity is a

16

two-step inquiry, steps that may be addressed in either order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). First, a court must ask whether the facts alleged, taken in the light of the party asserting the injury, show the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) *overruled in part on other grounds by Pearson*, 555 U.S. at 236.

If the answer to the first question is yes, the court must next ask whether the constitutional right was clearly established at the time. *See Saucier*, 533 U.S. at 201 (2001); *see also Cuevas v. City of Tulare*, 107 F.4th 894, 898 (9th Cir. 2024). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wilson v. Layne*, 526 U.S. 603, 615 (1999). The plaintiff bears the burden of establishing a right was clearly established. *Tarabochia v. Adkins*, 766 F.3d 1115, 1125 (9th Cir. 2014).

## B. Prolonged Traffic Stop

Plaintiff argues that Defendants violated his Fourth Amendment rights by unlawfully prolonging the traffic stop. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. Stopping an automobile and detaining its occupants, even if only for a brief period, constitutes a seizure under the Fourth Amendment. *Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014). As such, "an [officer] must have individualized reasonable suspicion of unlawful conduct to carry out such a stop." *Id.* (internal quotation marks omitted) (citing *Delaware v. Prouse*, 440 U.S. 648, 663 (1979)).

An otherwise lawful stop can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution. *Illinois v. Caballas*, 543 U.S. 405, 407 (2005). For instance, "[a]

17

seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Id.* The Supreme Court, however, has declined to set a definitive time limit on a lawful investigative stop. *See United States v. Sharpe*, 470 U.S. 675, 685 (1985). Instead, the critical inquiry is whether the officers "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Id.* at 686.

In the context of a traffic stop, an officer's mission includes ordinary inquiries incident to the traffic stop. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). Such inquiries generally include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 355 (citing *Delaware v. Prouse*, 440 U.S. 648, 658-60 (1979). If the officer prolongs the traffic stop beyond the completion of these tasks without probable cause or reasonable suspicion to do so, the stop becomes unlawful. *Id.* at 357; *see also United States v. Evans*, 786 F.3d 779, 786 (9th Cir. 2015) (prolonging a traffic stop unlawful unless supported by independent reasonable suspicion).

Defendants argue that no Fourth Amendment violation occurred because it was Plaintiff's actions that prolonged the stop. (Mot. at 15.) Indeed, the undisputed facts establish that Defendant Bates completed the mission of the traffic stop—i.e., completing all the steps leading up to issuing the traffic citation—within a few minutes. (SUF 11.) But as Bates attempted to give Plaintiff the citation, Plaintiff began to argue about the citation and asked to speak with a supervisor. (SUF 8.) Approximately ten minutes had elapsed by the time Plaintiff asked for a supervisor, and all ten minutes were directly related to tasks related to the traffic stop. (SUF 15.) As such, Defendant Bates'

actions up until this point were lawful. *See Rodriguez*, 575 U.S. at 354.

Defendant O'Brien arrived at the scene approximately eight minutes after he was called. (*See* SUF 20, 22.) Plaintiff then began to argue with him about the validity of the citation, and he continued to do so over the next twenty-five or so minutes. (SUF 24-29, 35-37.) While the traffic stop lasted approximately fifty minutes in total, the Court concludes that the length of the stop was reasonable. It was Plaintiff's quest to dodge the citation that prolonged the traffic stop, and not Defendants' actions. A traffic stop prolonged by the detainee's desire to debate the validity of the ticket or have a supervisor brought to the scene does not violates the Fourth Amendment. *United States v. Thompkins*, 833 F. App'x 648, 651 (7th Cir. 2020) (finding no Fourth Amendment violation where traffic stop prolonged because individual refused to leave his car until a supervisor arrived on the scene, and then contested the supervisor's instructions to leave the car); *Marshall v. City of Farmington Hills*, 693 F. App'x 417, 423 (6th Cir. 2017) (finding no Fourth Amendment violation where traffic stopped prolonged because the person stopped asked for a supervisor to be called to the scene and would not surrender his weapon when instructed to do so); *see also United States v. Sharpe*, 470 U.S. 675, 699-700 (1985) (J. Marshall, concurring) (opining that a prolonged stop "is permissible when a suspect's own actions are the primary cause for prolonging an encounter beyond the bounds to which *Terry*'s brevity requirement ordinarily limits such stops").

Plaintiff's argument to the contrary is not persuasive; he argues that the citation was not justified because his conduct did not violate the California Vehicle Code. (Opp'n at 2.) But Plaintiff's argument misses the mark; the inquiry is whether Defendants unreasonably prolonged the stop by performing tasks unrelated to investigating the potential traffic violation, not whether the

19

citation they issued was righteous. Whether Defendants were ultimately correct about Plaintiff's liability is thus irrelevant to determining whether the stop was unlawfully prolonged.

The undisputed facts establish that Defendants' conduct did not violate the Fourth Amendment because the traffic stop was not unreasonably prolonged by their actions. And because no constitutional violation occurred, Defendants are entitled to qualified immunity. As such, the Court recommends granting Defendants' Motion with respect to Plaintiff's Fourth Amendment claim for a prolonged stop.

## B.  Warrantless Searches of Plaintiff's Truck

The Second Amended Complaint alleges that the searches of Plaintiff's truck violated the Fourth Amendment. Searches "conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). Here, two searches are at issue: (1) Defendant Bates' search shortly after Defendant O'Brien arrived; and (2) the search conducted by Bates and O'Brien. (SUF 16-17.) Defendants do not dispute that either of these was a search and do not contend that either search was conducted pursuant to a warrant. Defendants argue, however, that both searches were lawful because an exception to the warrant requirement applied to each search. (Mot. at 18-22.)

### 1.    The First Search

The first search occurred while Plaintiff argued with Defendant O'Brien about the citation. Defendant Bates stepped onto the side of Plaintiff's truck to look inside the cab at the seatbelt in question. (SUF 16.) Bates' head entered the cab of the vehicle. Taking the facts in the light most favorable to Plaintiff,

his hand entered the vehicle too, but he did not otherwise enter the vehicle. (SUF 16.) The lawfulness of Bates' search turns on whether an exception to the warrant requirement justifies this search.

Plaintiff argues Defendant Bates' search violated the Fourth Amendment because he did not consent to the search. (Opp'n at 1-2.) Defendants argue, however, that this first search was lawful under the automobile exception, not based on consent.

Under the automobile exception, police officers may conduct a warrantless search "if there is probable cause to believe that the vehicle contains evidence of a crime." *United States v. Faagi*, 869 F.3d 1145, 1150 (9th Cir. 2017) (internal quotation marks and citation omitted). So long as the search is supported by adequate probable cause, there is no temporal limit on a search conducted under the automobile exception. *See United States v. Johns*, 469 U.S. 478, 484 (1985). Probable cause exists when, under the totality of the circumstances, there is a fair probability that evidence of a crime will be found in a particular place. *United States v. Steinman*, 130 F.4th 693, 711 (9th Cir. 2025). The test for probable cause is not precise; all that is required "is the kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'" *Florida v. Harris*, 568 U.S. 237, 243-44 (2013) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

Here, the undisputed facts establish that Defendant Bates had probable cause to stop Plaintiff. The California Vehicle Code mandates the use of seatbelts. *Kodani v. Snyder*, 75 Cal. App. 4th 471, 475 (1999); *see also* Cal. Veh. Code § 27315(d)(1) ("A person shall not operate a motor vehicle on a highway unless that person and all passengers 16 years of age or over are properly restrained by a safety belt."). Under California law, an officer who observes an occupant of a vehicle without a shoulder harness thus has probable cause to

21

stop the vehicle to determine whether a seatbelt violation has occurred. *Kodani*, 75 Cal. App. 4th at 477 (citing *In re Tony C.*, 21 Cal. 3d 888, 892 (1978)).

Defendant Bates observed four passengers in the cab of Plaintiff's truck. (*See* SUF 1-2.) Based on his knowledge and experience, he suspected that one passenger was not properly seat belted and initiated a traffic stop. (SUF 2-4.) Under California law, then, probable cause existed for Defendant Bates to initiate the traffic stop to determine whether a traffic violation occurred. After pulling the car over, he was able to see that the passenger seated next to the driver was "not seated in a designated seating position while sitting on a pillow" and was not secured by a seatbelt that was original to the truck. (SUF 9.) Bates suspected, therefore, that that passenger was not properly restrained. Based on the nature of the suspected violation, Officer Bates also had probable cause to believe that evidence of Plaintiff's Vehicle Code violation could be found inside the truck. His search was therefore justified under the automobile exception.[4]

As discussed above, much of Plaintiff's Opposition is dedicated to his argument that his conduct did not violate the seatbelt laws because all passengers were properly restrained. (*See* Opp'n at 1-2.) But, again, the

---

[4] The Ninth Circuit recently declined to address whether the automobile exception applies where law enforcement is searching for evidence of an infraction. *United States v. Vasquez*, No. 19-50275, 2021 WL 3011997, at *2 n.2 (9th Cir. July 15, 2021). This Court need not settle that question to decide this Motion; several districts of the California Court of Appeal have held that the automobile exception applies "irrespective of whether [the offense] is an infraction and not an arrestable offense." *People v. Castro*, 86 Cal. App. 5th 314, 320 (Cal. Ct. App. Nov. 18, 2022); *see also In re Randy G.*, 101 Cal. App. 5th 933, 983 (Cal. Ct. App. May 3, 2024); *People v. McGee*, 53 Cal. App. 5th 796, 805 (Cal. Ct. App. July 28, 2020). Thus, at the very least, existing precedent did not "place[] . . . beyond debate" that such conduct was unconstitutional. *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011).

lawfulness of Defendant Bates' search is not dependent on whether he was ultimately correct to give Plaintiff a ticket. What matters is that Defendant Bates had an adequate basis to search the vehicle; undisputed evidence establishes that he did. Accordingly, the Court concludes that Defendant Bates' first search did not violate the Fourth Amendment.

### 2.    The Second Search

The second search was also justified, this time, because Plaintiff consented to the search. A warrantless search conducted pursuant to valid consent is constitutionally permissible. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1983). Consent must be both unequivocal and specific. *United States v. Taylor*, 60 F.4th 1233, 1242-43 (9th Cir. 2023) (internal citations and quotation marks omitted). It must also be voluntarily given, not coerced. *Id.*; *see also United States v. Childs*, 944 F.2d 491, 494 (9th Cir. 1991) (requiring consent to conduct a warrantless search). In a § 1983 case, it is the plaintiff's burden to show that consent was not valid or voluntarily given. *Pavao v. Pagay*, 307 F.3d 915, 919 (9th Cir. 2002).

In this case, Plaintiff argues that he did not consent to a search. (Opp'n at 2.) The undisputed facts are to the contrary. As reflected on Plaintiff's own recording of the stop, Plaintiff asked Bates to confirm for Sergeant O'Brien that he saw four seatbelts installed in the truck. (Macy Video Tr. at 99.) In response, Bates said, "Can I get the passengers out so I can inspect it?" (Macy Video Tr. at 99.) Macy said, "Sure. Come on out guys." (Macy Video Tr. at 99.) Bates then conducted his search. In other words, the evidence shows that Plaintiff not only consented to the search, but that he facilitated it by having his passengers step out so he could have the officer confirm the configuration of his truck. Plaintiff points to no evidence undermining consent or suggesting that his consent was not freely given. Under these facts, no reasonable jury could find that Plaintiff

had not validly consented to the second search. *See Crowe v. Cnty. of San Diego*, 608 F.3d 406, 438 (9th Cir. 2010) (summary judgment appropriate where there is "no material issue of genuine fact as to whether [plaintiff] validly consented to the search").

In sum, the undisputed evidence establishes that both searches were lawful under an exception to the warrant requirement. As such, no constitutional violation occurred, and Defendants are entitled to qualified immunity as a matter of law.

For these reasons, the Court recommends granting Defendants' Motion for summary judgment on Plaintiff's Fourth Amendment warrantless search claims.

## RECOMMENDATION

IT THEREFORE IS RECOMMENDED that the District Judge issue an Order:

(1) accepting and adopting this Interim Report and Recommendation; and

(2) granting Defendants' Motion for summary judgment (ECF 66);

(3) entering Judgment in favor of Defendants and dismissing this action with prejudice.

DATED: May 20, 2025

_____
BRIANNA FULLER MIRCHEFF
UNITED STATES MAGISTRATE JUDGE

## NOTICE

Reports and Recommendations are not appealable to the United States Court of Appeals for the Ninth Circuit, but may be subject to the right of any party to file objections as provided in the Local Civil Rules for the United States District Court for the Central District of California and review by the United States District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until the District Court enters judgment.